UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———

JOHN MICHAEL CADARETTE et al.,

          Plaintiffs,          Case No. 1:12-cv-179

v.                            Honorable Paul L. Maloney

CINDI CURTIN et al.,

          Defendants.
_____/

**OPINION**

This is a civil rights action brought by four state prisoners pursuant to 42 U.S.C. § 1983. Plaintiffs Padgett and Kern have been dismissed from the action without prejudice. Remaining are Plaintiffs Cadarette and Calkins, to whom the Court has granted leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiffs' *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiffs' allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiffs' action will be dismissed for failure to state a claim.

**Factual Allegations**

Plaintiffs Cadarette and Calkins are incarcerated in the Oaks Correctional Facility. In their *pro se* complaint, Plaintiffs sue Warden Cindi Curtin, Food Services Director S. McLain and Food Service Steward (unknown) Kirkeby.

Plaintiff Cadarette alleges that he arrived at the Oaks Correctional Facility on April 14, 2011, and was placed in the protective custody unit. According to Plaintiff, the meals for prisoners incarcerated in the protective custody unit are prepared in the main kitchen and then transported to a makeshift satellite kitchen in the protective custody unit. Plaintiff Cadarette contends that the food served in the protective custody unit is unsafe because it is not transported or stored at food-safe temperatures, and, thus, exposes prisoners to an unreasonable risk of food-borne illnesses. On October 4, 2011, Plaintiff filed a grievance claiming that he had been served hot food at unsafe serving temperatures on October 2, 4 and 5, 2011. Plaintiff filed a second grievance the same day after he witnessed a prisoner cleaning food serving utensils in a utility sink in the unit laundry room.

Defendant McLain interviewed Plaintiff on October 19 regarding the grievances. McLain told Plaintiff that he had not received any complaint of prisoners becoming ill from the food served in the unit. He also told Plaintiff that the serving utensils had been washed in the laundry room sink long before Plaintiff had arrived and no one else had complained. During the interview, Plaintiff further complained that Food Services Stewards Kirkeby and Burton were requiring protective custody kitchen workers to use a non-food-service cart without a sneeze guard to serve beverages, and that the beverages on the cart were covered with garbage bags rather than food-service-grade plastic. In addition, Plaintiff complained that two compartments of the food services

steam cart and the refrigerator in the unit's satellite kitchen were not in working order.  McLain

responded that the methods of sanitation and food temperature controls in the protective custody unit

were in compliance with code and department policy.  McLain told Plaintiff that the broken steam

cart and refrigerator would be repaired, but as of the filing of his complaint, the equipment had not

been repaired.

Plaintiff Cadarette appealed the denial of his grievances to Step II.  Defendant Curtin

denied Plaintiff's Step II grievance appeals.  Plaintiff alleges that had Curtin conducted an

unannounced food service sanitation inspection or watched footage from the unit's security camera,

she would have seen that food was being served to protective custody prisoners at improper and

unsafe temperatures.

Plaintiff Calkins arrived at the Oaks Correctional Facility on November 22, 2011, and

was assigned to the protective custody unit.  Plaintiff Calkins contends that the meals served in the

unit are inadequate in amount and lack sufficient nutritional and caloric value to maintain health and

well-being.  Plaintiff maintains that the three meals served each day in the unit do not provide the

minimum daily caloric intake of 2900 calories.  Plaintiff grieved the matter and complained that he

is constantly hungry and has lost weight.  In response to Plaintiff's Step II grievance appeal,

Defendant Curtin maintained that all MDOC facilities prepared meals following a statewide menu

that satisfies the nutritional and caloric recommendations set forth in "The Dietary Guidelines for

Americans."

Plaintiff Cadarette and Calkins further claim that prisoners incarcerated in the

protective segregation unit at Oaks are unnecessarily treated more like prisoners in punitive

segregation units than prisoners in the general population.  Plaintiffs assert that they are not afforded

any recreation in the facility's gymnasium or in the "big" yard.  Rather, they are afforded only one

hour and twenty minutes of recreation per day in the "small" yard or unit day room.  Plaintiffs allege

that they are subjected to long periods of cell lock between the short recreation periods.  Plaintiffs

also have no direct access to the general and law libraries and must submit a "Segregation Law

Library Request" form in order to gain access to law library materials.  In comparison, the general

population prisoners receive at least three hours of recreation per day and get to spend one hour of

that time in the big yard.  General population prisoners also are allowed one hour per week in the

gymnasium.  In addition, general population prisoners have at least six hours a week of direct access

to the law library.  Plaintiffs contend that prisoners in protective custody could be afforded

recreational and programming opportunities more like those provided to the general population.

Plaintiffs further contend that they are not afforded the same recreation and program

opportunities as prisoners held in protective custody at the Bellamy Creek Correctional Facility.

According to Plaintiffs, prisoners in protective custody at Bellamy Creek are afforded direct access

to the facility's general and law libraries on a weekly basis.  In addition, protective custody prisoners

at Bellamy Creek are provided with more opportunities for outdoor recreation and receive weekly

access to the facility's gymnasium.

Plaintiffs Cadarette and Calkins seek declaratory and injunctive relief.

## Discussion

### I.      Failure to state a claim

A complaint may be dismissed for failure to state a claim if "'it fails to give the

defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl. Corp.*

*v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 129 S. Ct. at 1950 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

A.    **Eighth Amendment**

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes.  Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency."  *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981).  The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain."  *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346).  The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities."  *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998).  The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement."  *Rhodes*, 452 U.S. at 348 (citation omitted).  Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment."  *Ivey*, 832 F.2d at 954.

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety."  *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)).

Plaintiff Cadarette claims that Defendants failed to transport, store and serve food at food safe temperatures and alleges other unsanitary food practices in the protective segregation unit.  However, Plaintiff does not allege one instance in which he was sickened as a result of the

alleged unsafe temperatures or unsanitary conditions. *See Catanzaro v. Mich. Dep't of Corrs.*, No. 08–11173, 2009 U.S. Dist. LEXIS 60453, at *4, 2009 WL 2154921 (E.D. Mich. July 14, 2009) ("[W]hile the plaintiffs make generalized claims about unsanitary prison kitchen conditions, and assert that these conditions are likely to cause the spread of communicable diseases, they do not themselves establish that, as a result of allegedly unconstitutional prison conditions, they have been injured."). Absent physical injury, a plaintiff's claim for emotional injuries is barred by 42 U.S.C. § 1997e(e), which precludes any claim by a prisoner "for mental or emotional injury suffered while in custody without a prior showing of physical injury." *Id. See also Hardin-Bey v. Rutter*, 524 F.3d 789, 795-96 (6th Cir. 2008); *Taylor v. United States*, 161 F. App'x 483, 486-87 (6th Cir. 2007); *Jarriett v. Wilson*, 162 F. App'x 394, 400 (6th Cir. 2005). Consequently, Plaintiff Cadarette fails to state an Eighth Amendment claim.

Plaintiff Calkins further alleges that the meals served in the unit are inadequate in amount and lack sufficient nutritional and caloric value to maintain health and well-being. He claims that he is constantly hungry and has lost weight. Plaintiff, however, does not allege how much weight he has lost, nor does he allege that his weight is below that recommended for a person of his size or that he has suffered adverse health affects from the weight loss.[1] Plaintiff does not allege sufficient facts to establish that his current diet in the protective segregation unit presents a serious risk to his health or safety. Because the facts alleged by Plaintiff do not permit the Court to infer more than the mere possibility of misconduct, Plaintiff Calkins fails to state an Eighth Amendment claim. *See Iqbal*, 129 S. Ct. at 1950 (quoting FED. R. CIV. P. 8(a)(2)).

B.    **Equal Protection**

---

[1]According to the Michigan Department of Corrections Offender Tracking and Information System (OTIS), Plaintiff Calkins is 6'2" tall and weighs 270 pounds.

Plaintiffs Cadarette and Calkins allege that prisoners in protective segregation at Oaks are not afforded the same access to exercise and the prison library as prisoners in the general population at Oaks or prisoners in protective custody at the Bellamy Creek Correctional Facility.

"The Equal Protection Clause prevents states from making distinctions that (1) burden a fundamental right; (2) target a suspect class; or (3) intentionally treat one individual differently from others similarly situated without any rational basis." *Johnson v. Bredesen*, 624 F.3d 742, 746 (6th Cir. 2010). "Under rational basis scrutiny, government action amounts to a constitutional violation only if it 'is so unrelated to the achievement of any combination of legitimate purposes that the court can only conclude that the government's actions were irrational.'" *Id.* (quoting *Warren v. City of Athens,* 411 F.3d 697, 710 (6th Cir. 2005)).

Plaintiffs' allegations do not implicate a fundamental right and prisoners are not considered a suspect class for purposes of equal protection litigation." *Jackson v. Jamrog,* 411 F.3d 615, 619 (6th Cir. 2005); *see also Wilson v. Yaklich,* 148 F.3d 596, 604 (6th Cir.1998). Moreover, prisoners in protective custody clearly are not similarly situated to prisoners in the general population. The purpose of protective custody is to safeguard prisoners from a known risk of physical injury at the hands of another prisoner(s). Likewise, Plaintiffs are not similarly situated to protective custody prisoners at another prison, which may differ significantly in its facilities and prisoner population. Even if Plaintiffs were similarly situated to those groups of prisoners, Defendants have a rational basis for safeguarding protective segregation prisoners in their unit, thereby minimizing their risk of injury. Plaintiffs, therefore, fail to state an equal protection claim.

II.    Motions

Plaintiffs' have filed the following motions: motion for joinder of claims (docket #4), motion for joinder of parties (docket #5), motion for temporary restraining order and preliminary injunction (docket #6), motion for class certification (docket #8), motion for appointment of counsel (docket #9).  Because the Court finds that Plaintiffs' action fails to state a claim upon which relief may be granted, their motions will be denied as moot.

**Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiffs' action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).  In addition, Plaintiffs' motions for joinder of claims (docket #4),  joinder of parties (docket #5), temporary restraining order and preliminary injunction (docket #6), class certification (docket #8) and appointment of counsel (docket #9), will be denied as moot.

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3).  *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997).  For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal.  Should Plaintiffs appeal this decision, the Court will assess the $455.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiffs are barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g).  If they are barred, they will be required to pay the $455.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated:  June 1, 2012                          /s/ Paul L. Maloney                    
                                             Paul L. Maloney
                                             Chief United States District Judge